UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BROOKE KAY JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security Administration, <br><br> Defendant. | CASE NO. 2:10cv858-RBL-JRC <br><br> REPORT AND RECOMMENDATION <br><br> Noted for February 25, 2011 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrates Rule MJR 4(a)(4); and, as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 17, 18, 19.)

After considering and reviewing the record, the undersigned finds that ALJ Adams failed to evaluate properly the medical evidence by incorrectly defining important assessment terminology, incorrectly characterizing medical opinion evidence, failing to discuss significant probative evidence, and failing to provide specific and legitimate reasons for his rejection of medical evidence supplied by examining medical sources. Therefore, this matter should be

REPORT AND RECOMMENDATION - 1

reversed and remanded to the Administration for further consideration, beginning at step 2 of the sequential disability evaluation.

## BACKGROUND

Plaintiff was born on January 9, 1983. (Tr. 110.) Although plaintiff did not complete high school, she received her General Equivalency Degree at age 23. (Tr. 133.) Plaintiff has no relevant work experience. (Tr. 11, 17, 55.)

Plaintiff's family history includes a grandmother with bipolar disorder and a father with paranoid schizophrenia. (Tr. 210.) Her history includes sexual assault by her step-father, as well as extreme domestic assault by her partner, which included multiple head injuries. (Tr. 209-10, 324.) Plaintiff reported using methamphetamine and marijuana since the age of 14, with the exception of when she was incarcerated. (Tr. 208-09.) She reports participation in chemical dependency programs from age 15 to age 20. (Tr. 209.) She also reports that she typically relapses shortly after leaving such programs and "was shooting [methamphetamine] a lot." (Id.)

Plaintiff gave birth to twins in the fall of 2002, at age 19, and gave them up for adoption within the family when they were 18 months old. (Tr. 208, 273.) Plaintiff reports experiencing continual distress over this situation as her mother is able to see the children, although she "ha[s] to leave." (Tr. 210.) Plaintiff reported that "[t]heir dad is doing life for a gang-related murder." (Id.)

In February, 2006, plaintiff was incarcerated at Pine Lodge Corrections Center, where she was seen by psychiatrists. (Tr. 132-33, 208-09.) She was prescribed Seroquel and Prozac while incarcerated, although reported little relief from Prozac because she "didn't take it regularly," and reported Seroquel made her "feel somewhat of a zombie all day." (Tr. 152-53, 200, 210.) On October 1, 2006, plaintiff reported that her medications were helping greatly,

although she still reported issues with crowds, paranoia and "people initiating conversation with me." (Tr. 159.)

In October, 2006, plaintiff was living with her mother and attempting to receive psychiatric treatment. (See Tr. 205.) However, plaintiff was told that she could not receive psychiatric medications while pregnant, at which point, she refused a full assessment and refused counseling support. (Id.) She indicated that she would return for treatment following the birth of her child; however, she had a miscarriage. (Tr. 205, 210.)

On January 8, 2007, plaintiff was evaluated by Ms. Melinda Werny, an adult psychiatric nurse practitioner (hereinafter "Nurse Werny"). (Tr. 208-212.) Nurse Werny diagnosed plaintiff with amphetamine and cannabis dependence, both "in recent remission," and noted the need to rule out psychotic disorder and mood disorder, as she determined they potentially were methamphetamine related. (Tr. 211-12.) Nurse Werny also diagnosed plaintiff with post traumatic stress disorder. Plaintiff was prescribed medication specifically in order to "manage symptoms of Post Traumatic Stress Disorder." (Tr. 212.) Nurse Werny assigned plaintiff a Global Assessment of Functioning (hereinafter "GAF") of 50. (Tr. 212.)

In December, 2007, plaintiff presented at the emergency room with feelings of "stress," seeking benzodiazepines (tranquilizers, *e.g.*, valium, xanax). (Tr. 344-45.) She admitted to relapse with amphetamines and was diagnosed with anxiety disorder and substance abuse history. (Tr. 344, 345.)

In February, 2008, plaintiff attempted suicide by "crushing Ativan and injecting it into her arm," and reported thoughts about hurting others. (Tr. 331.) At that time, she reported using heroin and reported feeling very stressed out. (Id.)  She was admitted involuntarily to St. Joseph Hospital psychiatric unit. (Tr. 333.) She was diagnosed with polysubstance dependence disorder,

1  a mood disorder NOS (not otherwise specified), a generalized anxiety disorder, and post

2  traumatic stress disorder (hereinafter "PTSD"). (Tr. 334.) Dr. William R. Swanke, M.D.,

3  (hereinafter "Dr. Swanke"), an examining physician, evaluated plaintiff and noted that her GAF

4  was not assessed at intake, although he estimated that her GAF at time of discharge was 45 to 50.

5  (Tr. 334-35.) At the time of her intake, her toxicology report was negative. (Tr. 333, 334.)

## PROCEDURAL HISTORY

Plaintiff's protective filing date for her disability application is August 22, 2006. (Tr.

125.) Plaintiff alleges disability as of January 1, 2003, when she was 19 years old. (Tr. 110.)

Plaintiff alleges mental disorders of bipolar disorder, manic depression, and schizophrenic

tendencies, which allegedly makes plaintiff "anti-social and not able to handle crowds, [as well

as] paranoid around other people." (Tr. 129.) Plaintiff's claims were denied initially and on

reconsideration. (Tr. 46-52, 55-56.) Plaintiff requested a hearing, which Administrative Law

Judge Milbern J. Adams, (hereinafter "ALJ Adams"), held on April 15, 2008. (Tr. 20-41.)

On June 19, 2008, ALJ Adams issued a written decision finding plaintiff not disabled. (Tr. 9-

19.) ALJ Adams made specific findings in his decision. (Id.) At step one of the sequential

disability evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity

since January 1, 2003 -- the alleged onset date. (Tr. 11.) At step two of the sequential disability

evaluation, ALJ Adams found that since January 1, 2003, plaintiff had the severe impairments of

personality disorder with antisocial features and controlled substance addiction disorder. (Id.)

ALJ Adams also found that since January 1, 2003, plaintiff had the residual functional

capacity to "perform a full range of work at all exertional levels but with the following

nonexertional limitations: [plaintiff] can understand, remember and carry out simple instructions

compatible with unskilled work; she would have the average ability to perform sustained work

activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employer's rules regarding sick leave and absence; [plaintiff] can make judgments commensurate with the functions of unskilled work, respond appropriately to supervision, co-workers and work situations, and deal with changes within a routine work setting; [plaintiff] cannot be required to interact with the general public." (Tr. 14.) ALJ Adams found plaintiff capable of performing jobs that exist in significant numbers in the national economy, (Tr. 18), and found plaintiff not under a disability since January 1, 2003 (Tr. 19).

This June 19, 2008 decision is the final decision subject to review, as the Appeals Council denied plaintiff's request for review on April 17, 2010. (Tr.1-5.) Plaintiff filed the underlying complaint seeking judicial review of ALJ Adams' June 19, 2008 decision. (ECF No. 3.) Plaintiff alleges the following errors:

1) ALJ Adams failed to evaluate properly the medical evidence.
2) ALJ Adams failed to evaluate properly all of plaintiff's severe impairments at steps 2 and 3 of the sequential disability evaluation, specifically post traumatic stress disorder (PTSD) and affective disorder.
3) ALJ Adams erred in failing to rule on plaintiff's request for consultative examination and/or medical expert to appear at the hearing.
4) ALJ Adams erred in his assessment of plaintiff's residual functional capacity.
5) ALJ Adams' finding at step five of the sequential disability evaluation was without substantial evidence.

(ECF No. 17.)

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell, 161 F.3d at 601). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing* Magallenes, 881 F.2d at 750). However, the Commissioner "may not reject

'significant probative evidence' without explanation." Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting* Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." Flores, 49 F.3d at 571.

## DISCUSSION

1. ALJ Adams failed to evaluate properly the medical evidence.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (*citing* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, 157 F.3d at 831 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's opinion may not constitute substantial evidence by itself. Lester, 81 F.3d at 831 (citations omitted).

Plaintiff contends that ALJ Adams failed to evaluate properly the medical evidence, specifically the medical evidence provided by Nurse Werny, Dr. Daniel D. Brinkman, (hereinafter "Dr. Brinkman"), Dr. Swanke and the doctors at St. Joseph's Hospital, as well as that provided by Dr. Gary Smith, M.D., (hereinafter "Dr. Smith").

Plaintiff's examination by treating source Nurse Werny already has been discussed, see supra, p. 3, specifically Nurse Werny's diagnosis of PTSD and her assignment of a GAF of 50. (Tr. 212.) ALJ Adams discusses Nurse Werny's evaluation in January, 2007 and notes plaintiff's reported symptoms of depression that included sadness, self-disappointment and feelings of failure, anhedonia, vague suicide ideation without a plan to act . . . . difficulty sleeping unless she took Seroquel, which had been prescribed [and] also reported irritability and anger." (Tr. 11-12.) In his decision, ALJ Adams further indicates plaintiff's reported symptoms of anxiety, paranoia, "feelings of fear being around other people, and [being] worried that they were judging her." (Tr. 12.) Finally, regarding Nurse Werny's assessment, ALJ Adams notes that Nurse Werny "diagnosed [plaintiff] with amphetamine and cannabis dependence, in recent remission, and a deferred diagnosis of dependent personality disorder with anti-social traits." (Tr. 12.)

ALJ Adams does not mention Nurse Werny's diagnosis of PTSD, much less provide any reasons for failing to find plaintiff's PTSD to be a severe impairment. (See Tr. 12.) In addition, ALJ Adams erred when he stated that Nurse Werny "also assigned [plaintiff] a global assessment of functioning (GAF) score of 50 which indicates *moderate to serious* impairment in social, occupation, or school functioning." (Tr. 12 (emphasis added).) While a GAF of 51 – 60 indicates moderate symptoms, a GAF of 50 actually indicates "serious" impairment of school, occupational or social functioning. See, e.g., DSM-IV (Diagnostic and Statistical Manual of Mental Disorders, 4th ed.), p. 32. In addition, in this instance, Nurse Werny specifically and

separately indicated that she assessed the severity of psychosocial stressors to be "severe." (Tr. 212.)

Nurse Werny's diagnosis of PTSD and her assignment of a GAF of 50 as a severe or serious impairment of plaintiff's ability to function (see Tr. 212) are "significant probative evidence," and ALJ Adams' failure to explain appropriately why this evidence has been rejected is legal error. See Flores, 49 F.3d at 571.

Similarly, Dr. Brinkman, who examined plaintiff, also diagnosed her with "309.81 Post traumatic stress disorder" (PTSD). (Tr. 235.) However, ALJ Adams indicated that "Dr. Brinkman noted on a checkbox form that [plaintiff]'s mental health issues *could* be diagnosed as post traumatic stress disorder." (Tr. 15 (emphasis added).) While Dr. Brinkman indicated that plaintiff's symptoms *could* result from bipolar disorder, the section in which he handwrote 'post traumatic stress disorder' indicated that he was to "list each established diagnosis." (Tr. 235.) "Established" is underlined, likely to distinguish it from the next section, in which Dr. Brinkman listed bipolar disorder, which calls for the physician to indicate "each possible diagnosis." (Id.) Therefore, contrary to the statement by ALJ Adams in his written decision, Dr. Brinkman did not indicate that plaintiff's mental health issues could be diagnosed as PTSD, he indicated that a diagnosis of PTSD was "established." (See Tr. 235.) Dr. Brinkman also indicated an established diagnosis of an adjustment disorder with depressed mood. (Id.) ALJ Adams' characterization of the medical evidence supplied by Dr. Brinkman is erroneous.

The Court already has discussed plaintiff's February, 2008 suicide attempt, see supra, pp. 3-4, along with her discharge diagnoses of polysubstance dependence disorder, a mood disorder NOS (not otherwise specified), a generalized anxiety disorder, and post traumatic stress disorder (PTSD) at St. Joseph's Hospital. (Tr. 334.) The Court also noted the GAF assigned by Dr.

REPORT AND RECOMMENDATION - 9

Swanke at time of discharge, as 45 to 50. (Tr. 334-35.) Although ALJ Adams discusses plaintiff's admission to St. Joseph's Hospital and her attempted suicide, he does not mention plaintiff's discharge diagnoses of polysubstance dependence disorder, a mood disorder NOS, a generalized anxiety disorder and PTSD. (Tr. 12.) In addition, ALJ Adams does not mention Dr. Swanke's assignment of a GAF of 45 to 50 at plaintiff's discharge. The discharge diagnoses and Dr. Swanke's assignment of a GAF of 45 to 50 are significant probative evidence, and ALJ Adams's failure to discuss this medical evidence is error. See Flores, 49 F.3d at 571. In addition, Dr. Swanke was an examining physician. As ALJ Adams rejected this assessment by Dr. Swanke without comment, he did not provide "specific and legitimate reasons" for his rejection of this aspect of Dr. Swanke's opinion. See Lester, 81 F.3d at 830-31.

On April 15, 2008, Dr. Smith, an examining physician, indicated his opinion that plaintiff's medical conditions would continue to exist and impair plaintiff's ability to work regardless of plaintiff's use or non-use of drugs or alcohol. (Tr. 298.) He also indicated that this clinical basis for this opinion was that "[i]n addition of a history of polysubstance abuse (or dependence), [plaintiff] has persistent mental illnesses including Post Traumatic Stress Disorder [PTSD], Depressive Disorder NOS (Not Otherwise Specified) and possibly has Panic Disorder with Agoraphobia." (Id.) He specifically indicated his opinion that plaintiff "clearly suffers from a depressive disorder with a history of depressed mood." (Tr. 297.)

ALJ Adams concluded that "Dr. Smith's opinion is without substantial support from the other evidence of record." (Tr. 16.) This conclusion is erroneous, as much evidence supports Dr. Smith's opinion. ALJ Adams, however, inappropriately failed to discuss this supporting evidence, which includes the medical opinion evidence supplied by Nurse Werny, Dr. Brinkman and Dr. Swanke, as well as plaintiff's testimony.

REPORT AND RECOMMENDATION - 10

In addition, although ALJ Adams states that Dr. Smith noted that plaintiff "had a depressive disorder," Dr. Smith actually diagnosed plaintiff as *having* a depressive disorder that will continue to exist. (Tr. 298.) In addition, Dr. Smith also indicated his opinion that plaintiff's medically documented findings resulted in "episodes of deterioration or decompensation, each of extended duration." (Tr. 293.) However, in his written decision, ALJ Adams erroneously indicates that "there is no evidence that [plaintiff] has experienced any episodes of decompensation." (Tr. 13.)

Significant probative evidence within Dr. Smith's opinion was disregarded by the ALJ without comment, such as Dr. Smith's conclusion that plaintiff has persistent PTSD. (See Tr. 298.) ALJ Adams discussed other aspects of Dr. Smith's opinion incorrectly, such as concluding that "there is no evidence that [plaintiff] has experienced any episodes of decompensation," (Tr. 13), and finding that Dr. Smith noted that plaintiff *had* a depressive disorder (Tr. 16.) Therefore, the Court concludes that ALJ Adams' evaluation of the medical evidence supplied by Dr. Smith was improper. See Flores, 49 F.3d at 571.

2. <u>ALJ Adams failed to evaluate properly all of plaintiff's severe impairments at steps 2 and 3 of the sequential disability evaluation, specifically PTSD and affective disorder.</u>

In his written decision, ALJ Adams failed to discuss that Nurse Werny diagnosed plaintiff with PTSD, failed to discuss that Dr. Smith diagnosed plaintiff with PTSD, failed to discuss that Dr. Brinkman gave an "established" diagnosis of PTSD, and failed to discuss that plaintiff was diagnosed with PTSD at St. Joseph's Hospital. Given these errors, it is not surprising that ALJ Adams failed to find plaintiff's PTSD to be severe. However, this finding by ALJ Adams is not supported by substantial evidence in the record as a whole. See supra, pp. 8-11.

REPORT AND RECOMMENDATION - 11

In a similar fashion, ALJ Adams failed to discuss correctly Dr. Brinkman's established diagnosis of an adjustment disorder with depressed mood, failed to discuss plaintiff's diagnosis of a mood disorder NOS upon discharge at St. Joseph's Hospital, and incorrectly characterized Dr. Smith's assessment that plaintiff, at the time of his examination, "clearly suffer[ed] from a depressive disorder with a history of depressed mood," (Tr. 297), that would continue to exist (Tr. 298).

Therefore, the Court concludes that the failure by ALJ Adams to evaluate properly the medical evidence also resulted in his failure to evaluate properly all of plaintiff's severe impairments at step 2 of the sequential disability evaluation -- specifically, PTSD and affective disorder. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work'") (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). These failures by ALJ Adams resulted in improper determinations at all of the remaining steps of the sequential disability evaluation, including the ALJ's finding regarding plaintiff's residual functional capacity.

3. On remand, ALJ Adams should consider plaintiff's request for consultative examination and/or medical expert to appear at the hearing, if warranted.

Plaintiff contends that ALJ Adams erred in failing to rule on plaintiff's request for a consultative examination and/or medical expert. The ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen, 80 F.3d at 1288). The ALJ's "duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing* Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981)). This duty is "especially important when plaintiff

suffers from a mental impairment." Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991)). This is "[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset." Id. (*quoting* Social Security Regulation 83-20). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

ALJ Adams indicated his assessment that "the medical record contains only sporadic psychological assessments, obtained for the purpose of receiving public assistance benefits, and very few hospital records related to admission for mental health treatment." (Tr. 17.) This assessment indicates that the record may be inadequate to allow for a proper evaluation of the evidence by the ALJ. Indeed, the Court has concluded already that ALJ Adams failed to evaluate properly the medical evidence. However, it also may indicate that ALJ Adams did not properly review the substantial evidence already existing within the record. On remand, ALJ Adams should further evaluate the medical evidence. Following a proper evaluation of the medical evidence, ALJ Adams should decide whether or not a consultative examination and/or medical expert is required to develop the record adequately.

## CONCLUSION

ALJ Adams incorrectly defined important assessment terminology, incorrectly characterized medical opinion evidence, failed to discuss significant probative evidence, and failed to provide specific and legitimate reasons for his rejection of medical evidence supplied by examining medical sources. Therefore, this matter should be reversed and remanded to the

1 Administration for further consideration, beginning at step 2 of the sequential disability

2 evaluation.

3 Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4 fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P.

5

6 6. Failure to file objections will result in a waiver of those objections for purposes of de novo

7 review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

8 imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 25,

9 2011, as noted in the caption.

10 Dated this 3rd day of February, 2011.

11

12

13 J. Richard Creatura
United States Magistrate Judge
14